**NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Plaintiff,**

**v.**

**Michelle J. HAHN, Individually, and as Administrator of the Estate of Charles J. Hahn, Defendant–Appellant,**

**Denise Chalupa, Defendant–Appellee.**

**No. 05–0458.**

Court of Appeals of Iowa.

March 1, 2006.

Daniel P. Kitchen of Tindal and Kitchen, P.L.C., Washington, for appellant.

Bruce L. Walker of Phelan, Tucker, Mullen, Walker, Tucker & Gelman, L.L.P., Iowa City, for appellee.

Heard by MILLER, P.J., and HECHT and VAITHESWARAN, JJ.

MILLER, P.J.

Michelle Hahn, surviving spouse of decedent Charles Hahn and former named beneficiary on insurance policies owned by Charles, appeals from a district court ruling that declared the policy proceeds were the property of Denise Chalupa, Charles's sister and the named beneficiary at the time of Charles's death. Because we conclude Charles changed the beneficiary designations on the policies in violation of a valid court order, we reverse the district court ruling and remand this matter for entry of an order declaring the policy proceeds to be the property of Michelle.

## I. Background Facts and Proceedings.

On September 30, 2003, Michelle filed a petition for dissolution of the couple's marriage. On October 29, 2003, the district court entered a temporary restraining order in the dissolution proceeding, which provided, in relevant part,

> that both parties, during the pendency of this action and until final decree is entered *or until further order of this court,* are restrained from transferring, encumbering, concealing or in any way dissipating or disposing of any of the assets of either party....

(Emphasis added). At the time the order was entered Michelle was the named beneficiary on five whole life insurance policies issued by Northwestern Mutual Life Insurance Company (Northwestern), which were owned by and insured the life of Charles.

On December 1, 2003, Charles met with a Northwestern representative for the purpose of changing the beneficiary designation on the five policies. Charles wished to designate the couple's two minor children as beneficiaries, but the representative advised him against doing so absent a will or trust provision that would provide for administration of the proceeds. Charles then decided to and did change the beneficiary designations on all the policies to name his sister Denise as the beneficiary, explaining to the representative his belief that Denise would see the proceeds were used for the children's benefit.[1]

Charles also purchased a shotgun, and made a videotape in which he stated his intention to kill Michelle and himself. In the videotape Charles blamed Michelle for the divorce and his current mental state, asserted he did not want Michelle to "get anything," and indicated he had originally intended to kill himself in front of Michelle, but that when he was unable to change his will he decided to kill Michelle as well. The morning of December 2, after holding Michelle hostage for several hours, Charles died of a self-inflicted gunshot wound.

Northwestern filed an interpleader action to determine disposition of the policy proceeds. The district court released Northwestern from all liability to Michelle and Denise, directed the clerk of court to accept the policy proceeds and interest, and reserved jurisdiction over the proceeds and competing claims to the funds. Following a contested hearing, the court declared the policy proceeds

---

1. As the above-emphasized language of the injunction made clear, a party could seek a further order of the court if the party wished to act in a manner that would place any asset beyond the reach of the court, or if the intend- ed act would arguably violate either the letter or the spirit of the injunction. Charles took no steps to seek relief from or clarification of the injunction.

were the property of Denise. The court determined, in relevant part, that even if Charles had violated the temporary restraining order by changing the beneficiary designations, the court was without authority to declare the proceeds the property of Michelle. The court concluded the policies were valid and binding agreements, and it had no mechanism to enforce the temporary order as the "classic remedy" of contempt was not available following Charles's death.

Michelle appeals. She contends Charles changed the beneficiary designations in violation of a valid and enforceable court order. She asserts the district court was authorized, by its general equity jurisdiction, to set aside the new beneficiary designations.[2]

## II. Scope of Review.

This matter was brought as an equitable action, Iowa R. Civ. P. 1.251, and tried to the court in equity. As such, our review is de novo. Iowa R.App. P. 6.4.

## III. Discussion.

■ Michelle's claim presents us with two distinct, yet interrelated, questions. We must decide whether Charles's actions constituted a violation of the temporary restraining order, and if so whether the district court had the authority to set aside the change in beneficiary designation. Both appear to be questions of first impression in Iowa.

Turning first to the language of the temporary restraining order, we note that

> effect should be given to every word, if possible, to give the injunction as a whole a consistent and reasonable meaning. Effect should also "be given to that

which is clearly implied as well as that which is expressed." We consider "the spirit as well as the letter of the injunction to determine if its intent has been honestly and fairly obeyed."

*Bear v. Iowa Dist. Court,* 540 N.W.2d 439, 441 (Iowa 1995) (citations omitted).

The purpose of the temporary restraining order entered in the dissolution proceeding was " 'to maintain the status quo of the parties prior to final judgment and to protect the subject of the litigation.' " *Lewis Invs., Inc. v. City of Iowa City,* 703 N.W.2d 180, 184 (Iowa 2005) (citation omitted). The status quo to be preserved by the temporary restraining order was "the last, actual, peaceable, noncontested status which preceded the pending controversy." *Kent Prods., Inc. v. Hoegh,* 245 Iowa 205, 214, 61 N.W.2d 711, 716 (1953). Stated another way, the order was entered to prevent the parties from transferring, encumbering, or disposing of property that was subject to division by the court.

Charles's life insurance policies clearly fall within the definition of property subject to division. *See In re Marriage of Driscoll,* 563 N.W.2d 640, 643 (Iowa Ct. App.1997). Similarly, Michelle's designation as a beneficiary, even if a mere expectancy rather than a vested interest, "is an interest which may be disposed of by the dissolution court...." *Sorensen v. Nelson,* 342 N.W.2d 477, 480 (Iowa 1984); *see also Stackhouse v. Russell,* 447 N.W.2d 124, 125 (Iowa 1989) (noting a provision in a dissolution decree to maintain life insurance in favor of a divorced wife or children is enforceable); *Larsen v. Northwestern Nat'l Life Ins. Co.,* 463 N.W.2d 777, 780 (Minn.Ct.App.1990) (holding that right, ti-

---

2. Michelle also contends the court erred when it declined to find that a constructive trust should be created for the benefit of Michelle and the Hahns' children, and when it admitted offers to compromise into evidence

in violation of Iowa Rule of Evidence 5.408. Because we find Michelle's first claim to be dispositive of the appeal, we do not address these additional contentions.

tle and interest in a life insurance policy contemplates not only cash surrender value and right to physical possession, but also right as a beneficiary where such is intended).

If the Hahn's dissolution had proceeded to trial, disposition of both the cash value of the policies and the beneficiary designations would have been matters for the court to consider in light of its obligations to make an equitable property division and ensure adequate support for the Hahn children. *See* Iowa Code § 598.21 (2003). If Charles were free to change the beneficiary designations, the very purpose of the temporary order would be undermined. We accordingly conclude that, under the circumstances of this case, Charles's change of the beneficiary designations, made with the intent to divest Michelle of any interest in the policies, was a violation of the temporary restraining order. Other jurisdictions have reached similar conclusions. *See, e.g., New York Life Ins. Co. v. Sogol,* 311 Ill.App.3d 156, 243 Ill.Dec. 796, 724 N.E.2d 105, 108 (1999); *Mack v. Allstate Life Ins. Co.,* 42 Ohio App.3d 101, 536 N.E.2d 671, 673–74 (1987); *Webb v. Webb,* 375 Mich. 624, 134 N.W.2d 673, 674 (1965).

We therefore turn to the question of whether the district court had authority to declare the change in beneficiary designations void, even after Charles's death abated the dissolution proceedings. *See Jahnke v. Jahnke,* 526 N.W.2d 159, 161 (Iowa 1994) (noting death of one party ends marital relationship and thus abates dissolution proceedings, and that parties' rights are determined on the basis of the relationship as it existed at the time of the party's death). As our supreme court has not directly spoken to the issue, we draw guidance from decisions in other jurisdictions.

Cases from those jurisdictions indicate there is a split of authority on the issue. Some courts have held that a violation of the temporary injunction automatically voids the beneficiary change; others have declined to do so, concluding that the temporary restraining order terminated upon the death of a party to the proceeding, or that its violation was sanctionable only through in personam proceedings. *See Valley Forge Life Ins. Co. v. Delaney,* 313 F.Supp.2d 1305, 1307–08 (M.D.Fla.2002) (discussing split of authority); David P. Chapus, Annotation, *Divorce and Separation: Effect of Court Order Prohibiting Sale or Transfer of Property on Party's Right to Change Beneficiary of Insurance Policy,* 68 A.L.R.4th 929 (1989) (same). We find the former line of cases to be generally more persuasive, and hold that a court may set aside a change in beneficiary of a life insurance policy made in violation of a temporary injunction.

We reject the notion that, because Charles's death abated the dissolution proceeding, it terminated the temporary restraining order. "[The insured's] power and authority to make a beneficiary change was under inhibition until the moment of his death, after which moment no change could have been made by anybody." *Mack,* 536 N.E.2d at 673–74 n. 5; *see also Sogol,* 243 Ill.Dec. 796, 724 N.E.2d at 108. Such a position is consistent with the principle that dismissal of a dissolution petition does not void a temporary support order entered in the dissolution proceeding. *See In re Marriage of Sylvester,* 412 N.W.2d 624, 626–27 (Iowa 1987) (noting to conclude otherwise would frustrate the underlying purpose of the support order).

Although Charles's death precludes a remedy at law in the form of a contempt proceeding, it did not prevent the district court from resorting to its equity powers for a fair resolution of the issue. "Equity regards substance and intent, rather than form, to prevent injustice.... Equity regards as done that which, in fairness and good conscience, ought to be done." *Fed-*

*eral Land Bank of Omaha v. Bollin,* 408 N.W.2d 56, 62 (Iowa 1987).

In light of these maxims, we agree with the conclusion reached by the Michigan Supreme Court in *Webb v. Webb,* 375 Mich. 624, 134 N.W.2d 673, 674 (1965):

> [A] court, under its general powers, may order a return to the *status quo.* . . . Transfers of property in violation of an injunction are invalid and may be set aside by the party to a divorce suit, and subsequent death of the injunction violator does not prevent the court from exercising such power.

*See also Standard Ins. Co. v. Schwalbe,* 110 Wash.2d 520, 755 P.2d 802, 805–06 (1988).

### IV.  Conclusion.

Charles's changes in the beneficiary designations were made in violation of the temporary restraining order entered in the dissolution action, and should have been set aside. Accordingly, the district court erred when it declared the policy proceeds were the property of Denise. We reverse the district court ruling and remand this matter for entry of an order declaring the policy proceeds to be the property of Michelle.

**REVERSED AND REMANDED.**