2006 VT 111

## Karen Aither v. Estate of Jeffrey Aither

[913 A.2d 376]

No. 05-369

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 9, 2006

*Walter G. French* and *Jodi P. French,* Law Clerk (On the Brief), West Dummerston, for Plaintiff-Appellant.

¶ 1. **Reiber, C.J.** Wife Karen Aither appeals a family court decision denying her motion to enforce an initial temporary order barring husband Jeffrey Aither from disposing of any marital asset during the pendency of their divorce. Husband replaced wife as beneficiary of his life insurance policy in violation of the order, and then died before a final divorce decree was entered. The family court concluded that it lacked jurisdiction to enforce its injunctive order after husband's death, and accordingly dismissed wife's motion as moot. We reverse and remand.

¶ 2. The following facts are not disputed. On February 11, 2005, wife filed for divorce from husband. On February 14, the family court issued an initial temporary order barring both parties from selling, conveying, concealing, or encumbering "any marital asset," which was defined to include "whole life insurance policies," among other things. When the order was issued, husband had a universal life insurance policy in the amount of $100,000 that named wife as primary beneficiary. The parties do not dispute that the universal life policy was subject to the order's prohibition; universal life insurance is a type of whole life insurance. Cf. *Gleed v. Noon,* 614 N.E.2d 676, 678 (Mass. 1993) (holding that probate court order not specifically prohibiting insurance beneficiary changes but restraining decedent from "withdrawing, transferring, conveying, assigning, spending encumbering, pledging, bequeathing, or otherwise divesting . . . any assets" subject to division in probate did not bar beneficiary change). On March 1, however, husband removed wife as beneficiary and replaced her with husband's father and sister. Husband then died on March 27. On the following day, March 28, wife notified husband's life insurer of his death and learned of the change in beneficiaries. Wife then moved the family court to enforce the initial order and to find husband in contempt of that order. After a hearing on the enforcement and contempt motion, the family court enjoined dis-

bursement of the proceeds from husband's life insurance policy pending disposition of wife's motion.[1] On April 12, the family court appointed a volunteer guardian ad litem, Gary Carrier, to represent husband's interests. Mr. Carrier attended the oral argument on this appeal, and we thank him for his service.

¶ 3. The family court issued a decision on wife's enforcement motion in June 2005. The court concluded that the life insurance policy was an "asset of the parties" and therefore subject to the initial order's prohibition on transfer, but that under *Estate of Ladd v. Estate of Ladd*, 161 Vt. 270, 272-74, 640 A.2d 29, 30-31 (1994), the divorce had been abated by husband's death. Accordingly, the family court determined that it was "without jurisdiction to issue any relief" for a claimed violation of its order, and dismissed wife's motion as moot. Wife appeals.

¶ 4. On appeal, wife argues that husband's death did not divest the family court of all jurisdiction to enforce its order. She contends that the court retained authority to enforce the order by contempt or, in the alternative, based on more general equitable principles. Whether the family court — after a divorce proceeding is abated by a party's death — retains residual jurisdiction to enforce an order it issued before the death is a question of first impression for this Court. We review the family court's dismissal for lack of jurisdiction de novo. *Jordan v. State*, 166 Vt. 509, 511, 702 A.2d 58, 60 (1997).

¶ 5. The family court is a creature of statute, 4 V.S.A. §§ 451-459, and consequently has only the limited jurisdiction established thereby. See *Allen v. Allen*, 161 Vt. 526, 530-31, 641 A.2d 1332, 1335 (1994) (Dooley, J., concurring and dissenting) (citing cases). The family court has jurisdiction over seventeen types of proceedings, including divorces. 4 V.S.A. § 454(4). In cases over which the family court properly has jurisdiction, the court also has "all of the equitable and other powers of the superior court ... except as specifically limited by statute." *Id.* § 453(a). We have held, as have many other states, that a party's death while a divorce is pending abates the divorce action because the marriage is dissolved by operation of law at the time of death. *Ladd*, 161 Vt. at 273, 640 A.2d at 30-31; accord,

---

[1] Husband's life insurance carrier filed an action for interpleader to obtain judicial determination of the rightful beneficiary or beneficiaries of the policy; after depositing the full amount due under the policy into the court, husband's insurer was dismissed as a party. The policy proceeds remain on deposit pending this appeal.

e.g., *Hook v. Hook*, 519 N.E.2d 687, 689 (Ohio Ct. App. 1987); *Estate of Hackler v. Hackler*, 602 S.E.2d 426, 434 (Va. Ct. App. 2004); *Pratt v. Pratt*, 665 P.2d 400, 402 (Wash. 1983); *Pettygrove v. Pettygrove*, 393 N.W.2d 116, 119 (Wis. 1986). In such cases the family court no longer has jurisdiction because "the object sought to be accomplished by the final decree, . . . the dissolution of the marriage relation, is already accomplished by the prior death." *Hook*, 519 N.E.2d at 689 (citation omitted). We have also held, however, that a pre-abatement settlement agreement incorporated into the final divorce decree survives abatement. *Ladd*, 161 Vt. at 274-77, 640 A.2d at 32-33.

■ ¶ 6. The question of whether the death of a party strips the family court of all jurisdiction over matters relating to the abated divorce, even violations of its own pre-abatement orders, is not a simple one. As appellant argues, there are two theories under which the family court could enforce the order: (1) under that court's contempt power, established by statute, 4 V.S.A. § 453(a), 12 V.S.A. § 122, and further expounded by Rule 16 of the Vermont Rules for Family Proceedings; or (2) through the court's inherent equitable power over matters in its jurisdiction. Although we agree with the family court that contempt is not available against a deceased contemnor, we conclude that the family court did have the equitable power to award the insurance proceeds to wife, the party protected by the court's initial order.

## I.

■ ¶ 7. Wife first argues that the family court could have exercised its contempt powers to remedy husband's change of beneficiaries. Wife argues that the family court could, pursuant to the family court contempt statutes, 4 V.S.A. § 453(a) and 15 V.S.A. § 603, and the general contempt statute, 12 V.S.A. § 122, made applicable by § 603, cause this case to be brought back onto the family court docket despite its earlier abatement. However, wife has cited no authority for the proposition that the ensuing contempt proceeding could go forward against a dead person, nor can we find any such authority. See *Hackler*, 602 S.E.2d at 437 (holding that the trial court erred in ordering conservator of deceased husband's estate to pay wife in order to "purge [the deceased husband] of contempt"); see also *Socha v. Socha*, 515 N.W.2d 337, 339 n.2 (Wis. Ct. App. 1994) (noting that contempt is not available when the putative contemnor is dead, citing cases). Further, the sanctions provided by Rule 16(c) of the Vermont Rules for Family Proceedings are inadequate to compel

compliance from a deceased person; as the Reporter's Notes to that rule make clear, even the "additional remedies" allowed by Rule 16(c)(4) include only those remedies "provided by statute" (e.g., escrow orders to secure payment of child support arrearages, 15 V.S.A. § 796, or civil penalties for willful arrearages, *id.* § 797). The family court correctly concluded that contempt provides no adequate remedy here.

## II.

¶ 8. Other courts are divided on the question whether a divorce proceeding's abatement also divests the trial court of equitable jurisdiction to enforce orders entered before the abatement. Several states follow the rule that abatement also divests the trial court of the equitable power to enforce its pre-abatement orders. See, e.g., *Am. Family Life Ins. Co. v. Noruk*, 528 N.W.2d 921, 923 (Minn. Ct. App. 1995) ("When one of the parties dies . . . a temporary restraining order has no effect and the court's jurisdiction to enforce it ends."); *Hackler*, 602 S.E.2d at 437 (holding that trial courts do not have jurisdiction to remedy violations of injunctions when divorce has been abated by a party's death). Other courts have determined that the abatement of a divorce by a party's death does not divest the trial court of jurisdiction to enforce pre-abatement orders. See, e.g., *Cent. States, Se. & Sw. Areas Pension Fund v. Howell*, 227 F.3d 672, 675-76 (6th Cir. 2000) (applying Michigan law); *Candler v. Donaldson*, 272 F.2d 374, 377 (6th Cir. 1959) (applying Michigan law); *Webb v. Webb*, 134 N.W.2d 673, 674-75 (Mich. 1965) ("Transfers of property in violation of an injunction are invalid and may be set aside by the party to a divorce suit, and subsequent death of the injunction violator does not prevent the court from exercising such power."); *Lindsey v. Lindsey*, 492 A.2d 396, 398 (Pa. Super. Ct. 1985) (holding that, even after the death of a party, "the lower court had the authority to void the disposal of any marital property in violation of its injunction"); *Standard Ins. Co. v. Schwalbe*, 755 P.2d 802, 805 (Wash. 1988) (holding that a trial court had equitable power to enforce its preliminary injunction prohibiting a change in insurance beneficiaries, despite the death of the violator). A federal district court, similarly, has noted that transfers in violation of temporary injunctions, while not per se void, may be voided based on a balancing of equities. *Valley Forge Life Ins. Co. v. Delaney*, 313 F. Supp. 2d 1305, 1309 (M.D. Fla. 2002) (citing *Wilharms v. Wilharms*, 287 N.W.2d 779, 784 (Wis. 1980), in which the Wisconsin Supreme Court

remanded for an evidentiary hearing to consider relevant equitable factors affecting validity of transfer in violation of pre-abatement temporary order).[2]

 ¶ 9. We conclude that the latter line of cases represents the better reasoning. Although the death of one party to a divorce does abate the divorce action itself, we agree with the *Schwalbe* court that "a mechanistic application" of that rule would frustrate the larger purpose of ensuring that courts have the power to enforce their own valid orders to avoid unjust results. *Schwalbe*, 755 P.2d at 805. We have previously declined to strictly apply the abatement rule where doing so would have led to unjust results. *Ladd*, 161 Vt. at 274-77, 640 A.2d at 32-33 (applying contract principles to avoid unjust result that strict abatement would have required). We agree with the *Wilharms* and *Delaney* courts, however, that a per se rule voiding all transfers in violation of initial orders would also have undesirable results. Such a rule would give temporary orders the effect of final distributions of property, thereby unnecessarily creating property rights in parties protected by such initial orders. *Delaney*, 313 F. Supp. 2d at 1308-09. Because temporary orders are intended only to preserve the status quo pending a final disposition that may not mirror the terms of the order, a per se rule voiding transfers in violation of initial orders would be insufficiently flexible to respond to the myriad factual scenarios that might arise. *Wilharms*, 287 N.W.2d at 783. A rule requiring equitable balancing in such situations provides sufficient flexibility for the family court to provide complete relief to the parties before it, and is consistent with that court's limited statutory jurisdiction.

¶ 10. In the instant case, the family court's initial restraining order was an exercise of its equitable power. 4 V.S.A. § 453(a) (family court has "all of the equitable and other powers of the superior court as to civil matters within its jurisdiction, except as specifically limited by statute"); see *Soucy v. Soucy Motors, Inc.*, 143 Vt. 615, 617, 471 A.2d 224, 225 (1983) (once invoked, "equity retains jurisdiction over the entire action to see that complete relief is administered"). The

---

[2] One federal circuit court holding that the trial court had no power to enforce a pre-abatement order expressly rested that holding on the fact that the putative violator of the order had no knowledge of it; this, the court noted, distinguished the case from *Webb, Candler*, and their ilk. *Briece v. Briece*, 703 F.2d 1045, 1047-48 (8th Cir. 1983) (applying Illinois law).

purpose of the initial order, as its language makes plain, was to preserve the status quo pending the family court's final determination of the parties' respective rights to the marital assets. Accord *Libow v. Freeport Drug Shop, Inc.*, 218 N.Y.S.2d 897, 898 (Sup. Ct. 1961) ("[T]he purpose of a temporary injunction is to preserve the *status quo* pending the trial . . . ."). To hold that the order does not bar husband from changing his life insurance beneficiaries — unless he remains alive to be proceeded against in contempt — would be to deprive that portion of the order of much, if not all, of its force. The remedy of contempt is no remedy at all in this context; it evaporates the instant it is needed. Accord *Nw. Mut. Life Ins. Co. v. Hahn*, 713 N.W.2d 709, 712 (Iowa Ct. App. 2006) ("If [now-deceased husband] were free to change the beneficiary designations, the very purpose of the temporary order would be undermined.").

¶ 11. As the *Lindsey* court noted, "[i]t is axiomatic that a court must have the power to enforce its own orders." 492 A.2d at 398; see also *United States v. United Mine Workers of Am.*, 330 U.S. 258, 331 (1947) (Black & Douglas, JJ., concurring in part and dissenting in part) (noting that courts "must have power to act" to remedy "disobedience of an affirmative court order" in order to ensure "orderly judicial proceedings"). If that power is not to be illusory, it must include the equitable power to order a return to the status quo when the party violating a temporary order has died. It is a well-worn maxim that "equity regards as done that which should be done"; it is no less true that "the hand of equity has two sides. . . . it [also] wipes away that which was attempted but should not have been." *Johnson v. Johnson*, 645 P.2d 911, 915 (Kan. Ct. App. 1982).

■ ¶ 12. We draw further support for our holding from Rule 16 of the Vermont Rules for Family Proceedings, which was promulgated in recognition of the fact that "[e]fficient enforcement [of court orders] is critical to Family Court proceedings and ultimately must depend upon the court's most effective weapon, the contempt sanction." Reporter's Notes, V.R.F.P. 16. While contempt may be the family court's "most effective" enforcement tool, *id.*, it is not the only tool available, as the explicit statutory grant of "all of the equitable and other powers of the superior court as to civil matters within its jurisdiction" makes clear. 4 V.S.A. § 453. If the family court's interim orders in divorce proceedings are to have meaningful force with respect to life insurance beneficiary changes — and thereby contribute to the efficient enforcement "critical" to family court proceedings

— that court's jurisdiction must extend to post-abatement enforcement of those orders when equity requires it.

¶ 13. Because husband's change in the beneficiaries of his life insurance policy was in violation of the family court order, wife may be entitled to a return to the status quo the order was intended to preserve. The record before us, however, is insufficient to make that determination. On remand, in order to facilitate the development of an adequate factual record and to ensure that all interested parties are before the court in a properly adversarial process, the family court should provide notice to the current named beneficiaries of husband's life insurance policy.

¶ 14. We conclude that the family court erred in dismissing wife's motion for enforcement, and therefore reverse the family court's decision on that motion and remand for the family court to determine whether wife is entitled to equitable relief.

*Reversed and remanded for further proceedings consistent with this opinion.*