**IN THE COURT OF APPEALS OF IOWA**

No. 12-2051
Filed June 25, 2014


**IN RE THE MARRIAGE OF EDWARD COLYER
AND JANET COLYER**

**Upon the Petition of
EDWARD COLYER,**
        Petitioner-Appellant,

**And Concerning
JANET COLYER,**
        Respondent-Appellee.
_____


        Appeal from the Iowa District Court for Woodbury County, Jeffrey A.

Neary, Judge.


        Edward Colyer appeals the district court's award of alimony to Janet

Colyer.  **AFFIRMED.**


        Craig H. Lane, Sioux City, for appellant.

        Judith Garnos Huitink, Sioux City, for appellee.


        Heard by Vogel, P.J., and Doyle and Tabor, JJ.

**VOGEL, P.J.**

Edward Colyer appeals the district court's award of alimony to Janet Colyer. Edward claims that, due to his asserted precarious employment situation, his relatively small income, and Janet's failure to establish a financial need, the spousal support should be reduced or eliminated. Janet defends the support award and requests appellate attorney fees. We conclude the district court properly awarded spousal support to Janet, though we decline to award Janet appellate attorney fees. Consequently, we affirm.

## I. Factual and Procedural Background

The parties were married on September 30, 1994. Janet was fifty-two years old and Edward was forty-seven at the time of trial. No children were born during their marriage. Janet has two adult children from a previous relationship, who the parties raised in the marital home and partially supported through college. Edward has one child from a prior relationship and paid child support in the amount of $125 each month during this marriage.

Edward and Janet each have high school degrees, and both work at Palmer Candy in Sioux City, Iowa. Janet is a repackaging scheduler and earns $17.55 per hour. Edward is a mechanic supervisor and earns $34.60 an hour. Each party works approximately ten hours Monday through Thursday and eight hours on Friday and Saturday.

The parties own two parcels of real estate. The marital residence, located on 7th Avenue in Sioux City, was the parties' home for eighteen years. At the time of trial, Janet was living in the 7th Avenue house, though she intended to move into her mother's house once the dissolution was finalized. The parties

also own a house with an address in Salix, Iowa, in which Edward is currently residing with his girlfriend.[1]

Both parties suffer health problems. Edward was diagnosed with bipolar disorder, anxiety, and depression, as well as high cholesterol and high blood pressure. He takes medication for these conditions. As a result of behavior problems associated with his brain disorders, he was suspended from work for three weeks and then placed on probation, which he has been on for the past two years.[2] Janet suffers from Addison's disease, depression, acid reflux, sleep apnea, high cholesterol, and cardiomyopathy, and takes nine to ten different medications. None of her medical conditions impede her ability to work. Janet also suffers from a gambling problem, for which she is attending Gamblers Anonymous meetings.

The parties separated in March 2011. A joint stipulation was entered into regarding the division of marital assets. Edward received both parcels of real estate, three vehicles, the majority of the appliances in the houses, and agreed to pay Janet $15,000 as a property settlement. Janet received one of the vehicles and some appliances. Each party retained their 401(k) and savings accounts. Additionally, during the pendency of the proceeding, Edward paid the mortgage on the 7th Avenue home, Janet's car payment, as well as her cell phone, water, sewer, and garbage bills, which amounted to approximately $1400 each month.

The only contested issue in the dissolution proceeding was the award of spousal support and attorney fees. A hearing was held on October 11, 2012,

---

[1] Edward testified he and his girlfriend share expenses.
[2] Edward stated he was suicidal and felt like going to work and hurting people.

and the district court entered a dissolution decree on October 25. The court accepted the stipulation of the parties and awarded spousal support to Janet in the amount of $1000 each month for ten years, after which Edward's obligation will be reduced to $500 each month for the rest of Janet's life or until her remarriage, whichever comes first. The court also awarded Janet $1000 in trial attorney fees and assessed the costs to Edward. Edward appeals the award of alimony.

## II. Standard of Review

We review the decision on a dissolution decree de novo. *In re Marriage of Becker*, 756 N.W.2d 822, 824 (Iowa 2008). Although we give weight to the fact findings of the district court, we are not bound by the court's findings. *Id.* at 825.

## III. Spousal Support

When determining the appropriateness of spousal support, the court must consider "(1) the earning capacity of each party, and (2) present standards of living and ability to pay balanced against relative needs of the other." *In re Marriage of Estlund*, 344 N.W.2d 276, 281 (Iowa Ct. App. 1983). Spousal support is not an absolute right; rather, an award depends on the circumstances of each particular case. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976).

The discretionary award of alimony is made after consideration of the following factors:

a. The length of the marriage.
b. The age and physical and emotional health of the parties.
c. The distribution of property made pursuant to section 598.21.

   d. The educational level of each party at the time of marriage and at the time the action is commenced.

   e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

   f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

   g. The tax consequences to each party.

   h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

   i. The provisions of an antenuptial agreement.

   j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1)(a)–(j) (2011). Additionally, we consider property division and spousal support together in evaluating their individual sufficiency. *In re Marriage of Dahl*, 418 N.W.2d 358, 359 (Iowa Ct. App. 1987).

In awarding Janet spousal support, the district court considered the discrepancy in the parties' income and the division of assets in which Edward was awarded substantially more of the marital property. Edward asserts he supported Janet's children during the marriage, and also claims Janet wasted assets on gambling. Janet responds by noting Edward's generous spending habits and alleged drinking problem. However:

> What [one party] is really asking us to do with both [the] child support and alimony arguments is to review the income sources and expense allocations of this marriage. To do so with any degree of accuracy, we would be forced to delve into a complete accounting of the parties' income and expenses during the marriage. We find that an impossible task, uncalled for under Iowa law. Instead, the trial court makes an assessment of whether there appears to be an accurate accounting of the marital assets at the time of trial. The court makes its findings from both the evidence

> presented and the credibility of the witnesses. An equitable distribution is then made. We find this is the accepted manner to divide marital assets according to our case and statutory law.

*In re Marriage of Driscoll*, 563 N.W.2d 640, 643 (Iowa Ct. App. 1997).

Given this standard, and upon consideration of the appropriate factors, we agree with the assessment of the district court. Janet earns slightly more than one-half of what Edward earns. Though neither party sufficiently detailed their monthly expenses,[3] it was reasonable to conclude Janet would need spousal support to maintain the standard of living she enjoyed during the marriage. Moreover, Edward retained both properties, and, combined, the equity totals approximately $90,000. While neither party is in good health, both maintain the jobs at which they have been employed for the past few decades. They are thus relatively equally situated in continued employment prospects as well as some concerning health-related issues. These facts support the award of spousal support in the amount of $1000 each month for ten years and then $500 for the rest of Janet's life or until her remarriage. Consequently, we affirm the decision of the district court.

**IV. Attorney Fees**

In her appeal, Janet requests appellate attorney fees. In considering such a request, we look to the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Wood*, 567 N.W.2d 680, 684 (Iowa Ct. App. 1997). With these considerations in mind, and in light of

---

[3] Edward submitted an exhibit in which he listed his bills, including the payments made on behalf of Janet during the pendency of the dissolution proceedings, but did not list other expenses, such as food or gas. Janet did not submit any affidavit of expenses.

the financial conditions of both parties, we decline to award Janet appellate attorney fees.

Costs of this appeal assessed one-half to each party.

**AFFIRMED.**